Filed 2/21/23

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER M. JOHNSON,<br><br>    Defendant and Appellant. | A162599<br><br>(Napa County Super. Ct.<br>No. 19CR003549) |

Defendant Christopher Johnson appeals his sentence and 13 of his 22 convictions for sexually abusing his nine-year-old daughter. A jury found him guilty on nine counts of aggravated sexual assault of a child (Pen. Code,[1] § 269, subd. (a)(4)); nine parallel counts, based on the same conduct, of sexual acts on a child (§ 288.7, subd. (b)); and four counts of forcible lewd acts on a child (§ 288, subd. (b)(1)). Johnson admits the sexual conduct and concedes that substantial evidence supports his convictions on the nine lesser counts, but for the other thirteen convictions he argues the evidence is insufficient to show he used force, fear, or duress to effect the abuse. He also argues that the court abused its discretion and denied his right to confront witnesses by precluding questions about past sexual abuse of the victim; that his aggregate sentence of 32 years plus 135 years to life is unconstitutionally

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication except for parts I.B. and II.A.

[1] All statutory references are to the Penal Code unless otherwise noted.

1

cruel and/or unusual; and that the court infringed his right to a jury trial when, as mandated by section 667.6, subdivision (d) (section 667.6(d)), it imposed "full, separate, and consecutive" terms on all 22 counts based on a fact found not by a jury but by the judge—namely, that he committed the crimes on "separate occasions."[2]

We conclude that all of defendant's contentions but the last lack merit. On that issue, we hold that, insofar as section 667.6(d) required the court to make his sentences consecutive rather than concurrent based on a judicially found fact, it was consistent with controlling precedent. (*Oregon v. Ice* (2009) 555 U.S. 160 (*Ice*).) But insofar as section 667.6(d) mandated the imposition of "full" terms on the second through fourth forcible lewd act counts, on which the court would otherwise have had discretion to impose either a full term (§ 667.6, subd. (c)) or a term equal to one-third the middle term (§ 1170.1, subd. (a)), the statute increased the mandatory minimum sentence for those discrete crimes based on judicial factfinding. No published decision addresses the constitutionality of that aspect of section 667.6(d). We conclude that it violates the Sixth Amendment as construed in *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*). We further conclude that the error was not harmless.

We will therefore affirm defendant's convictions on all counts; affirm his sentences on the eighteen counts other than forcible lewd acts; but remand for the court to exercise its discretion to resentence defendant on the four lewd acts counts.

---

[2] The California Supreme Court is currently reviewing whether the operation of section 667.6(d) "compl[ies] with the Sixth Amendment to the U.S. Constitution." (*People v. Catarino* (Oct. 14, 2021, D078832) [nonpub. opn.], review granted Jan. 19, 2022, S271828 (*Catarino*).)

2

# I. BACKGROUND

## A. *Facts Relevant to the Sixth Amendment Challenge*

In 2015, defendant and his former wife Sheree[3] took custody as foster parents of Jane Doe and her younger brother, who are the children of Sheree's sister. In September 2018, just before Jane turned eight, defendant and Sheree adopted her.

Defendant started sexually abusing Jane in late 2018 or early 2019. He began with cuddling and playful touching, such as tickling on the sofa, progressed to tickling her vagina, and eventually engaged in several forms of copulation. (He later made a comment suggesting that he waited to begin abusing Jane until the adoption was finalized, to avoid discovery in adoption-related inspections.) In all, defendant admitted that he licked Jane's vagina approximately two dozen times; had her lick his penis or put it in her mouth as many as a dozen times; engaged in mutual oral copulation a few times; and tried to penetrate her vagina twice with his finger and twice with his penis, stopping because the penetration hurt her. He abused Jane in the early morning while Sheree was at the gym.

The abuse ended one morning in October 2019 when Sheree came home early from the gym and found defendant and Jane, who was naked, together in bed. Sheree ordered defendant to leave. She then spoke with Jane, who was scared and embarrassed but eventually told Sheree that "when you're at the gym, he licks my vagina."

Defendant was eventually charged with nine counts of aggravated sexual assault of a child via forcible oral copulation (§§ 269, subd. (a)(4), 287, subd. (c)(2)(B)), nine parallel counts of sexual acts on a child (§ 288.7,

---

[3] Because Sheree shared a last name with defendant at the relevant times, we refer to her by first name only, without intending any disrespect.

subd. (b)), and four counts of forcible lewd acts on a child (§ 288, subd. (b)) with special allegations that those four counts involved substantial sexual conduct (§ 1203.066, subd. (a)(8)).

## B. *Facts Relevant to Other Issues*

On the day she discovered the abuse, Sheree asked defendant to stay at his parents' home. Later that day, she told defendant's parents what she had learned. At trial, Sheree recounted part of the conversation as follows: "They did ask, . . . '[Jane] does have a tendency to lie, are you sure[?],' and I told them, 'I believe her because a child would not talk about something that graphically.' And they were like, 'well, this has happened to her before,' and I said, 'yeah, but she's never talked about it before. Um, this is different.' "

Thereafter, defendant stayed with his parents and had no unsupervised contact with Jane. Sheree did not report the abuse at once, as she feared the consequences for her custody of her children. But two months later, in December 2019, a police officer and Child Welfare workers visited her to investigate an anonymous report that Jane had told a friend about "naked time with daddy."[4] Sheree reported what she had seen, and been told by Jane, in October.

The next day, police officers recorded a forensic interview of Jane, two pretext calls about the abuse that Sheree made to defendant, and an interview of defendant after his arrest.

---

[4] As Sheree recounted it at trial, the report was that Jane had said that she "used to have naked time with daddy and now she gets to have naked time with daddy at grandma and grandpa's house." After the officers' visit, Sheree confirmed with defendant's parents that they had not in fact allowed him to have more than fleeting contact with Jane during Jane's periodic visits to their home. The People have not alleged any further abuse after the day Sheree discovered defendant and Jane in bed.

4

At trial, three witnesses gave testimony relevant to the issues on appeal: Jane, Sheree, and Dr. Anna Washington, an expert in "sexual abuse, suggestibility, false allegations, and the [e]ffects of abuse on children." The jury heard recordings of the December 2018 police interviews of defendant and Jane, as well as the pretext calls. In those recordings, Jane described defendant licking her vagina, while he admitted the full range of sexual conduct set out above. In her testimony at trial, Jane, then 10 and a half years old, described the full range of sexual conduct defendant had admitted. She testified that he never hit or physically hurt her, except that it hurt when he put his penis in her vagina.

The only material discrepancy between defendant's recorded statements and Jane's account—in both her December 2018 interview and her March 2021 testimony—concerned whether defendant facilitated the abuse via threats.

In her interview, Jane repeatedly said that defendant "forced [her] to do it" or to "let him do it" by saying that he would take away her iPad or "electronics or other things" and by threatening that he would "give [her] a consequence." At other points, she referred to "lots of consequences," "bad, bad consequences," or "weird mean consequences," but taking away her iPad or "electronics" was the only specific threatened consequence she identified.

Defendant did not address the issue in the pretext calls, but in his police interview he denied having ever threatened Jane and specifically denied having threatened to take away her iPad or electronics.

At trial, Jane testified that she was naked when defendant licked her vagina. Asked why she took off her clothes, she testified that defendant

5

would say "a threaten," and tell her she would get in trouble if she did not.[5] When asked if defendant ever threatened to take anything away from her, she answered, "I don't remember," but when asked specifically if she recalled anything about her "iPad, or games, or anything like that," she replied, "My iPad." In questioning about times defendant touched her vagina with his finger, Jane replied affirmatively when asked if he would "threaten you to take off your clothes" or say things that made her "feel scared," but shook her head when asked if she could recall "examples of what he would say." She responded similarly to questions about times defendant put his penis in her mouth.

Jane said in her interview that defendant had said that what they were doing "was against the law," that "mama . . . wouldn't like it," and that he "would go to jail" if "anybody finds . . . out." At trial she testified that she did not tell Sheree what was happening because she was "scared" she would "get in trouble"; asked if she was scared because of things defendant had said, she replied, "I don't really know why I was scared."

Dr. Washington explained Child Sexual Abuse Accommodation Syndrome, a model for understanding how children respond to and report sexual abuse. Washington testified that children past preschool age are

---

[5] "Q: . . . Did he say something to you that would then have you take your own clothes off or how did that happen[?] [¶] A: He'd say something. [¶] Q: What kind of thing would he say? [¶] A: A threaten. [¶] Q: He would threaten you? [¶] A: (The witness nods her head.) [¶] Q: . . . [W]hat do you mean by that? Like do you remember any of the things he would say to you that would happen if you didn't do it? [¶] A: Um—(The witness shakes her head.) [¶] Q: Did he ever say that somebody could get in trouble? [¶] A: Yeah. [¶] Q: Did he say that you would get in trouble or somebody else? [¶] A: I would get in trouble. [¶] Q That you would get in trouble if you didn't take off your clothes and do that? [¶] A: (The witness nods her head.) [¶] Q: Is that a yes? [¶] A: Yes."

rarely suggestible, or easily "influenced by another person to [b]elieve [events] or respond in a certain way . . . that they wouldn't have otherwise responded"; that studies have shown children with a history of trauma, including sexual abuse, to be less suggestible in general than other children; that for ethical reasons no studies exist of how suggestible children are to false memories of sexual abuse; and that while it is normal for children to lie about little things or to get out of trouble, it is rare for them to lie to get caregivers in trouble, or to falsely report negative events or ones outside their experience.

On recross, Dr. Washington tied together some of those points as follows: "it's hard to create a false memory if it's an implausible memory for a child. . . . Sexual abuse is . . . difficult to understand and imagine for most children who haven't had that experience, and so that would be an implausible event to . . . come up with for a child on their own. It would be potentially easier to have the understanding of sexual abuse if the child has been previously sexually abused, and so in that way it would be more of a plausible event. [However] the research studies that looked at suggestibility showed that children with [a] . . . history [of] sexual abuse or physical abuse were even more resistant to suggestibility probably for other reasons . . . . So even though [sexual abuse is] more plausible maybe for them they have other reasons to be more resistant to suggestibility in forensic interview settings."

## C. *Verdict and Sentence*

The jury found defendant guilty on all twenty-two counts and found true the allegations that the four forcible lewd act counts involved substantial sexual conduct. The court sentenced him to prison for 32 years (comprising the eight-year middle term on each of the four forcible lewd act counts) (§ 288, subd. (b)(1)) plus 135 years to life (comprising nine terms of 15 years

to life, as required by section 269, subdivision (b), for each count of aggravated sexual abuse of a child). (The court also imposed sentences of 15 years to life on each of the nine counts of sexual acts with a child (§ 288.7, subd. (b)) but stayed those sentences pursuant to section 654.) Defendant timely appealed.

## II. DISCUSSION

### A. *Defendant's Challenges to His Convictions*

Defendant contends that we must reverse his convictions of aggravated sexual abuse and forcible lewd acts, each of which includes the element of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" (§§ 269, subd. (a)(4), 287, subd. (c)(2)(B), 288, subd. (b)), because no substantial evidence showed that he used such means to abuse Jane. A substantial-evidence claim can succeed on appeal only if, after reviewing the record in a light most favorable to the judgment, we find no evidence that is " ' " 'reasonable, credible, and of solid value, from which a rational trier of fact could find [the disputed element] beyond a reasonable doubt.' " ' " (*In re O.D.* (2013) 221 Cal.App.4th 1001, 1009.) We do not reweigh, resolve conflicts in, or reevaluate the credibility of the evidence; nor do we decide if *we* find that it proves guilt beyond a reasonable doubt, but only if *any* rational trier of fact could have so found. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13, overruled on another point in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 (*Soto*).) The Attorney General, implicitly conceding a lack of proof that defendant used force or fear of injury, argues that the record includes evidence he used duress. We agree.

Duress is " ' "a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have

8

submitted." ' " (*Soto*, *supra*, 51 Cal.4th at p. 246, quoting *People v. Leal* (2004) 33 Cal.4th 999, 1004, italics omitted.) Duress "involves psychological coercion" and "can arise from various circumstances," including a defendant and victim's relationship and relative ages and sizes. (*People v. Espinoz*a (2002) 95 Cal.App.4th 1287, 1319–1320.) If the victim is young and the defendant is a family member, " ' "the position of dominance and authority of the defendant and his continuous exploitation of the victim" ' " are relevant to the issue of duress. (*Id*. at p. 1320.) The "reasonable person of ordinary susceptibilities" whose reactions we must assess is thus a reasonable person of the victim's age and relationship to the defendant (*Soto*, *supra*, at p. 246, fn. 9)—here, the eight- or nine-year-old daughter of an adult man.

Seen from that perspective, the evidence amply sufficed to permit a rational jury to find that defendant subjected Jane to threats of hardship or retribution sufficient to psychologically coerce a reasonable eight- to nine-year-old daughter of ordinary susceptibilities to perform or acquiesce in sexual acts she would not otherwise have performed or acquiesced in. Jane clearly and repeatedly said, in the recorded interview played for the jury, that defendant "forced" her to submit to or perform sexual acts by threatening to take away her iPad or impose other "mean," "weird," or "bad" "consequences" if she did not. At trial, Jane testified consistently. Although, as defendant emphasizes, the only specific threats she could recall at trial were that she would get in trouble and have her iPad taken away—and those only after being prompted—the limited specificity in her accounts was simply a factor for jurors to consider in deciding whether to believe her. Jane's inability to consistently and without prompting recall more detail did not make it impossible for a rational juror to believe her testimony. That testimony thus constitutes substantial evidence of duress.

9

Jane also reported that defendant told her that he would go to jail and Sheree would be upset if she disclosed the sexual abuse. The Attorney General relies on these threats as a further form of duress, while defendant contends that such statements do not count because they were directed at inhibiting " 'later *disclosure* of the sex acts and not [facilitating] the sex acts themselves.' " (*People v. Hecker* (1990) 219 Cal.App.3d 1238, 1251, fn. 7, overruled on another point in *Soto, supra,* 51 Cal.4th at p. 248, fn. 12, quoting *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154, fn. 8, overruled on another point in *People v. Griffin* (2004) 33 Cal.4th 1015, 1028.) But the same court that issued *Hecker* later disavowed its language as "overly broad" and held that threats about the consequences of reporting abuse can create duress because they represent an abuser's "attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*People v. Cochran, supra,* 103 Cal.App.4th at p. 15, overruled on another point in *Soto, supra,* 51 Cal.4th at p. 248, fn. 12; accord, *People v. Senior* (1992) 3 Cal.App.4th 765, 775 [rejecting distinction drawn in *Hecker*].) We agree with that court's later insight: by making threats of how disclosure would result in hardship, defendant psychologically coerced Jane not to report past acts of abuse and thereby ensured his ongoing ability to perform further acts of abuse.

Defendant's second contention is that the court abused its discretion and infringed his rights under the confrontation and due process clauses (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, §§ 15, 28) by preventing his attorney from cross-examining Jane about the past sexual abuse to which Sheree briefly alluded when she testified that defendant's parents had said, "this has happened to [Jane] before," and she had replied, "yeah, but . . . ." When defense counsel asked Jane, "Has anyone other than [defendant] ever touched your vagina before that you didn't want to?" the prosecutor objected.

10

After a sidebar discussion not relevant on appeal,[6] defense counsel argued that the prior abuse might be relevant based on Dr. Washington's testimony that "having had an experience would increase the suggestibility" of a child to false memories of the same experience. Defense counsel conceded that he did not know if Jane knew of the past abuse (assuming it had in fact occurred). The court sustained the objection based in relevant part (see fn. 6, *ante*) on section 352, because "the probative value is far outweighed by the prejudice in the consumption of time and confusing the issues."

The court did not abuse its discretion. A court may exclude evidence under section 352 if "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) In assessing such a ruling, we

---

[6] After the prosecutor objected under Evidence Code section 782 (section 782), which requires a defendant seeking to offer "evidence of sexual conduct of the complaining witness . . . to attack the credibility of [that] witness" to file a written motion with a sealed offer of proof as to the relevance of the evidence (*id*., § 782, subd. (a)), defense counsel asked to research section 782 over a recess. After doing so, counsel apologized for not having known of the need for a motion and explained that he had not decided that past abuse might be relevant until he heard certain testimony. The court sustained the objection to questions about past abuse on two grounds: the lack of a section 782 motion, and the fact that the evidence was inadmissible under Evidence Code section 352 (section 352) because its likely prejudice outweighed its probative value. On defense counsel's inquiry, the court clarified that requesting a continuance to file a section 782 motion would be futile because the court still would sustain the objection based on section 352 alone. Defendant was not obliged to then perform the idle act of requesting a continuance and filing a motion under section 782 that, even if granted, could not lead to admission of the evidence. (Civ. Code, § 3532 ["The law neither does nor requires idle acts"]; see *People v. Ayala* (2000) 23 Cal.4th 225, 263–264.) The exclusion of potential past-abuse evidence can thus be upheld on appeal only under section 352.

must identify the probative value of the excluded evidence (or, as here, potential evidence).  At trial, defendant contended only that past abuse, if Jane knew of it, might be relevant to her suggestibility as to the existence of abuse by defendant, based on the expert testimony that children are less suggestible about matters outside their experience.  But as defendant now concedes, the fact that he admitted the sexual abuse means that the issue on which his counsel argued that the evidence had probative value—Jane's suggestibility as to whether such abuse did in fact occur—was inconsequential.

Defendant thus raises a new theory on appeal:  Evidence of past abuse was relevant to impeach Jane's credibility not just on the issue of whether the abuse occurred, but on the issue of whether it was facilitated by duress, "because the prior abuse made her more suggestible on that issue." Defendant forfeited this claim by not raising that theory below as a basis for finding the evidence more probative than prejudicial.  (See *People v. Cornejo* (2016) 3 Cal.App.5th 36, 55 [defendant forfeited theory that evidence was admissible for one purpose by advocating admission only for another].)[7]

But even if defendant had raised his new theory below, the court would have been well within its discretion to reject it.  Defendant notes testimony by Dr. Washington that, while children who have been abused are generally less suggestible, they may be more suggestible on the topic of sexual abuse

_____

[7] Defendant's brief concludes with a blanket claim that, insofar as he has forfeited any arguments, he was denied his right to effective assistance of counsel.  (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.)  Such a claim requires a showing that an attorney's performance both fell short of reasonable competence and prejudiced the defendant's case.  (*Strickland v. Washington* (1984) 466 U.S. 668, 686.)  Given the layers of speculation in defendant's theories about the possible probative value of the potential evidence, as detailed in text, he is unable to show the requisite prejudice.

insofar as it is not an event outside their experience. He speculates that "[t]he same principle would seem to apply to a child who had previously been sexually abused by [duress]." He also notes Washington's testimony that children who suffer sexual abuse often feel shame and guilt and believe the abuse was their fault. On that basis, he suggests that evidence of the circumstances of Jane's past abuse might have shown that she had a motive to fabricate claims of duress because she "may have been even more fearful than a child who had not previously been sexually abused that she would be blamed for it," and because she may have been blamed for the prior abuse or alternatively may have "escaped blame because the prior abuse was accomplished by force or threats."

That array of contingent theories does not show the evidence defendant sought to develop was likely to have significant, or any, probative value on the issue of duress. It rests on layers of speculation about whether past abuse occurred, whether Jane was aware of it at the time, how adults around her reacted to the past abuse, whether and how she perceived those reactions, and how if at all those events affected her in 2019. Weighing against admissibility is the time that a mini-trial as to what a ten-and-a-half-year-old child recalled about abuse that may have occurred five or more years earlier would have consumed, and the confusion of the issues it could have caused. The court did not abuse its discretion in excluding such potential evidence.[8]

---

[8] Defendant's claim fares no better under the confrontation or due process clauses. To show a violation of the former, he must establish that, absent a limit on impeachment, "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility . . . ." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680; see *People v. Dyer* (1988) 45 Cal.3d 26, 48 [confrontation clause affords judges "wide latitude" to impose reasonable limits on cross-examination into potential bias of

**B. *Defendant's Challenges to His Sentence***

As noted, defendant was sentenced to 32 years (comprising four consecutive eight-year middle terms on the four convictions of forcible lewd acts) (§ 288, subd. (b)) plus 135 years to life (comprising nine consecutive terms of 15 years to life on the nine convictions of aggravated sexual assault) (§ 269, subd. (a)(4)).

### 1. The Sixth Amendment Challenge

Defendant argues that the court infringed his right to a jury trial by relying on a fact found by the judge—that his offenses occurred on "separate occasions"—to find all the counts of conviction subject to section 667.6(d). That statute requires a court to impose a "full, separate, and consecutive term" for each conviction to which it applies. Section 667.6(d) and California Rules of Court,[9] rule 4.426(a), require that the sentencing judge, not the jury, make the finding that triggers the statute's application.[10]

---

prosecution witness to avoid prejudice, confusion of issues, or questioning that is repetitive or marginally relevant].) A court denies due process if it bars a defendant from presenting "relevant evidence of *significant* probative value." (*People v. Jennings* (1991) 53 Cal.3d 334, 372.) For all the reasons the potential evidence lacked probative value for purposes of section 352, it also fell short under those standards.

[9] All subsequent citations to rules are to the California Rules of Court.

[10] The text of section 667.6(d) strongly implies that the judge, not the jury, must determine if a defendant convicted of multiple crimes committed them on separate occasions: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, *the court shall consider* whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior." (§ 667.6(d)(2), italics added.) Rule 4.426(a) unambiguously confirms that the judge must make those findings: "When a defendant has been convicted of multiple violent sex offenses as defined in section 667.6, the sentencing judge

14

a. *The Statutory Framework*

Our constitutional analysis applies only to the four convictions for forcible lewd acts (§ 288, subd. (b)), not those for aggravated sexual assault (§§ 269, subd. (a)(4), 287, subd. (c)(2)(B)), because only the former are subject to the determinate sentencing law (DSL) (§ 1170 et seq.).  In 1977, the DSL replaced the indeterminate sentence law, which did not enable judges to set the length of prison terms.  (3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, §§ 161, 309, 313–316.)  The DSL now governs most felony sentences, although some crimes still carry indeterminate sentences in the form of X years to life—such as the sentences of 15 years to life that section 269 required the trial court here to impose on each of defendant's nine convictions of aggravated sexual assault.  The judge's factfinding under section 667.6(d) did not affect the length of those terms.

Such exceptions aside, the DSL designates a triad of "three fixed-year, or determinate, sentencing options for nearly all felony offenses."  (*People v. Sasser* (2015) 61 Cal.4th 1, 8.)  If a defendant is convicted of multiple crimes, "[s]ection 669 authorizes the court to decide whether sentences should run concurrently or consecutively" (*People v. Jones* (1988) 46 Cal.3d 585, 592) unless another statute mandates consecutive terms.  The decision under section 669 to make sentences concurrent or consecutive does not depend on factual findings.  (*People v. Black* (2007) 41 Cal.4th 799, 822 (*Black*), overruled on other grounds by *Cunningham v. California* (2007) 549 U.S. 270, 292.)

---

must determine whether the crimes involved separate victims or the same victim on separate occasions. [¶] . . . [¶] (2) *Same victim, separate occasions*. [¶] If the crimes were committed against a single victim, the sentencing judge must determine whether the crimes were committed on separate occasions."

15

If a court makes multiple terms concurrent, they must all be full terms. (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1156, fn. 3.) If it makes multiple terms consecutive, section 1170.1 governs calculation of their length unless a more specific statute applies. (*People v. Sasser*, *supra*, 61 Cal.4th at pp. 8–9.) Under section 1170.1, "the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for [certain] enhancements . . . ." (§ 1170.1, subd. (a).) The principal term is the longest term imposed for any of the offenses (including certain enhancements), while the subordinate term comprises one-third of the middle term for each other conviction at issue (plus one-third of the terms for certain enhancements). (*Ibid.*) Under this framework, the minimum term on a second or subsequent felony conviction subject to the DSL is one-third the middle term, unless a more specific statute applies.

Section 667.6 is such a statute. It creates a "special sentencing scheme" for defendants convicted of specified sex offenses. (*People v. Craft* (1986) 41 Cal.3d 554, 558, superseded in part by statute as stated in *People v. Jones* (2001) 25 Cal.4th 98, 112 (dis. opn. of Chin, J.).) If a defendant is convicted of one or more offenses listed in section 667.6, subdivision (e), such as forcible lewd acts (§ 288, subd. (b)) (see § 667.6, subd. (e)(5)), the sentencing court in some circumstances may exercise discretion to impose, and in some circumstances *must* impose, a "full, separate, and consecutive term" for each such offense. (§ 667.6, subds. (c)–(d).)

Specifically, "if the crimes involve separate victims or involve the same victim on separate occasions," then "a full, separate, and consecutive term *shall* be imposed" for each crime (§ 667.6(d), italics added); if "the crimes involve the same victim on the same occasion," then "a full, separate, and

16

consecutive term *may* be imposed" for each "in lieu of the term provided in Section 1170.1" (§ 667.6, subd. (c), italics added). As the term "may" indicates, if the crimes involve the same victim and same occasion, the court may decline to impose full consecutive terms under section 667.6, subdivision (c) (section 667.6(c)) and instead impose terms dictated by the default rules of sections 669 and 1170.1—i.e., either full, concurrent terms or consecutive terms consisting of one full upper, middle, or lower term and one-third the middle term on each other count. As noted, the sentencing judge makes the key finding whether crimes involving the same victim occurred on separate occasions—triggering section 667.6(d) and mandating full terms—or the same occasion. (§ 667.6(d); rule 4.426(a).)

Accordingly, when the jury found defendant guilty on four counts of forcible lewd acts against the same victim (§ 288, subd. (b)(1)), its verdict gave rise to three possibilities: (1) the sentencing court could have found, as it did, that the offenses occurred on "separate occasions," triggering section 667.6(d) and mandating the imposition of "full, separate, and consecutive" terms on all four convictions, or (2) the court could have found that the offenses occurred on the "same occasion," in which case it could then have (a) exercised its discretion under section 667.6(c) to impose "full, separate, and consecutive" terms on all four convictions, or (b) chosen not to invoke section 667.6(c) and instead imposed the terms dictated by sections 669 and 1170.1—i.e., (i) full, concurrent terms or (ii) consecutive terms consisting of one full lower, middle, or upper term of 5, 8, or 10 years as the principal term, and three subordinate terms equal to one-third the middle term, or 2 years 8 months.

b. *The Constitutional Framework*

The law in this area has undergone much development and one major reversal in the last two decades, so we must review several pertinent

17

decisions. The first is *Apprendi v. New Jersey* (2000) 530 U.S. 466, which held that the Sixth Amendment requires that a jury find any fact that increases the statutory maximum penalty for a crime. (*Apprendi*, at p. 476.) Two years later, in *Harris v. United States* (2002) 536 U.S. 545 (*Harris*), the court declined to extend *Apprendi*, holding that its rule did not apply to factual findings that increase the mandatory *minimum* sentence for a crime. (*Id.* at p. 550.)

In California, the line of relevant cases began a year later in *People v. Groves* (2003) 107 Cal.App.4th 1227, in which this court held that *Apprendi* did not require that a jury make the "separate occasions" finding under section 667.6(d) that mandates the imposition of full, consecutive terms. Given the scope of the Sixth Amendment as defined by *Apprendi* and *Harris*, *Groves*'s analysis was sound. We reasoned as follows: "The [DSL] provides that consecutive terms are typically calculated at one-third the middle base term. [Citation.] A trial court *may* impose a full consecutive term for a second sexual assault offense, even if both offenses were committed during a single transaction . . . [as a] discretionary sentencing choice. ([§ 667.6(c)].) If the trial court finds that both offenses were committed on separate occasions . . . , [it] *must* impose the full consecutive term for the second offense. ([§ 667.6(d)].) The mandatory imposition of this maximum possible sentence does not constitute an increase in the maximum possible sentence." (*Groves*, at p. 1231.)

In other words, because a judge always has discretion under section 667.6(c) to impose full sentences on each count without a "separate occasions" finding, the fact that such a finding triggers section 667.6(d) and makes such sentences mandatory does not increase the *maximum possible* sentence for any offense. *Apprendi* thus did not require that the finding be made by a

18

jury.  Because the *Apprendi* rule did not then apply to findings that increased a mandatory *minimum* sentence (*Harris, supra,* 536 U.S. at pp. 558–560), we had no occasion in *Groves* to consider whether a finding that triggers section 667.6(d) has the effect of increasing a mandatory *minimum* sentence; such an effect would have had, at that time, no constitutional significance.

In 2007, the California Supreme Court held that "imposition of consecutive sentences does not violate a defendant's Sixth Amendment right to jury trial." (*Black, supra,* 41 Cal.4th at p. 821.)  *Black* did not involve section 667.6.  Of the two aspects of sentencing affected by section 667.6(d)— the imposition of *consecutive* terms and of *full* terms—*Black* addressed only the constitutional significance of a judge's discretionary decision under section 669 to make multiple sentences consecutive rather than concurrent. (*Black,* at pp. 820–823; see rule 4.425 [listing factors to consider in exercising discretion].)  *Black* did not involve judicial factfinding that mandated full terms—or factfinding of any kind.  (*Black,* at p. 822 ["Factual findings are not required" to confer discretion to make sentences consecutive].)[11]

Two years later, in *Ice, supra,* 555 U.S. 160, the high court addressed the constitutional significance of decisions to make sentences consecutive. An Oregon statute mandated that sentences run concurrently "unless the judge finds statutorily described facts"; in most cases, "finding such facts permits—but does not require—the judge to order consecutive sentences."

---

[11] A year after *Black,* the court summarily applied its rule to reject a claim that a court violated the Sixth Amendment by imposing sentences consecutively based on factors not found by a jury. (*People v. Wilson* (2008) 44 Cal.4th 758, 813.)  And in 2010, the Second District summarily applied *Black* to reject a Sixth Amendment challenge to the imposition of consecutive terms under section 667.6(d)—but not to the imposition of full terms—based on judicially found facts.  (*People v. King* (2010) 183 Cal.App.4th 1281, 1324.) Those opinions add nothing to the analyses in the opinions surveyed in text.

(*Id*. at p. 165.)  The court emphasized that *Apprendi* and decisions extending its rule all involved "sentencing for a discrete crime, not . . . for multiple offenses different in character or committed at different times."  (*Id*. at p. 167; see *id*. at p. 163 [noting "the offense-specific context that supplied the historic grounding" for *Apprendi*].)  Because the "historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently" (*id*. at pp. 168, 169), *Ice* held, "legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*" (*id*. at p. 169).

The court rejected Ice's argument that, because " 'he was *entitled*' to' concurrent sentences absent the fact findings Oregon law requires," the rule of *Apprendi* must apply to those factfindings.  (*Ice*, *supra*, 555 U.S. at p. 170.) The court observed that "the scope of the constitutional jury right must be informed by the historical role of the jury at common law," which means that the constitutional right does not "attach[] to every contemporary state-law 'entitlement' to predicate findings."  (*Ibid*.)  Thus, while Oregon law entitled Ice to concurrent sentences absent certain factual findings, the federal Constitution did not entitle him to have those findings made by a jury.

*Ice*, in sum, limits the *Apprendi* rule to findings that increase the "punishment authorized for a particular offense" (*Ice*, *supra*, 555 U.S. at p. 163), not findings that affect whether the sentences for multiple offenses run consecutively or concurrently.

In 2013 the high court overruled *Harris*, *supra*, 536 U.S. 545, and held that a jury must find any facts that increase the mandatory minimum sentence for a crime.  (*Alleyne*, *supra*, 570 U.S. at p. 103.)  A jury found Alleyne guilty of using a gun during a crime, which bore a minimum sentence of five years to life; a judge found that he had brandished the gun, raising the

mandatory minimum to seven years to life. (*Id.* at pp. 103–104.) The U.S. Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury." (*Id.* at p. 103.) "[B]ecause the legally prescribed range [of sentences] *is* the penalty affixed to the crime," the court explained, "a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." (*Id.* at p. 112.) Accordingly, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." (*Id.* at p. 103.)

Two years later, in *People v. Scott* (2015) 61 Cal.4th 363 (*Scott*), our Supreme Court noted the holding in *Ice*, *supra*, 555 U.S. at page 170, that " 'the Sixth Amendment's restriction on judge-found facts' is 'inapplicable' when a trial judge makes factual findings necessary to the imposition of consecutive terms," and reiterated that a court's decision to make terms consecutive does not implicate that Amendment. (*Scott*, *supra*, 61 Cal.4th at p. 405.) A jury found Scott guilty of two sexual offenses among those subject to section 667.6 (*Scott*, at pp. 371, 403), and the judge exercised discretion pursuant to section 667.6(c) to impose full consecutive terms on the offenses. (*Scott*, at p. 403.) *Scott* did not involve section 667.6(d). Nor did it discuss *Alleyne*, *supra*, 570 U.S. 99, the new applicability of the *Apprendi* rule to mandatory minimum sentences, or the constitutional significance of the fact that section 667.6(d) mandates not only "consecutive" terms but "full" ones.

Most recently, the California Supreme Court mentioned the rule of *Ice* and *Black* while holding that a court cannot make factual findings on appeal that were not made by a jury but are necessary to uphold a conviction. (*People v. Aguayo* (2022) 13 Cal.5th 974, 994.) The Attorney General suggested that "a reviewing court's authority to make such a finding to support the convictions is akin to a sentencing court's determination whether

21

to impose concurrent or consecutive sentences under section 654." (*Id.* at p. 995.) The court disagreed, noting that " 'imposition of consecutive terms . . . does not implicate a defendant's Sixth Amendment rights' " (*ibid.*, quoting *Black*, *supra*, 41 Cal.4th at p. 821) and that "[s]ection 654 is largely a sentencing issue, which lies outside the historical province of a jury" (*Aguayo*, *supra*, at p. 995, citing *Ice*, *supra*, 555 U.S. at p. 168).[12] The decision did not cite *Alleyne*, section 667.6, or any statute under which judicial factfinding alters the length of the sentence for a discrete crime.

Since the high court's 2013 decision in *Alleyne* overruling *Harris* and extending *Apprendi* to judicial factfinding that increases the mandatory minimum sentence for an offense, no published decision has analyzed whether section 667.6(d) violates the Sixth Amendment by requiring courts, based on judicially found facts, to impose "full" terms on convictions that otherwise would be potentially subject to sentencing under the DSL, thereby increasing the mandatory minimum sentence for those offenses.[13]

---

[12] The references to section 654 are puzzling, as courts decide whether to impose sentences concurrently or consecutively under section 669, not section 654. For our purposes, the salient point is that the court did no more than reiterate the basic rule of *Ice* and *Black* as to consecutive sentences.

[13] The court's two significant Sixth Amendment decisions since 2013 do not address *Alleyne*, section 667.6, or the aggregation of multiple sentences. (*People v. Gallardo* (2017) 4 Cal.5th 120, 124–125 [judge cannot find disputed facts about the conduct underlying a defendant's prior convictions to trigger sentencing enhancement based on the convictions]; *People v. Mosley* (2015) 60 Cal.4th 1044, 1049–1050 [judge does not violate Sixth Amendment by finding facts that subject defendant to sex-offender residency restriction].) In the case in which our Supreme Court has granted review to address whether section 667.6(d)'s "full . . . term" provision violates the Sixth Amendment, the Court of Appeal opinion was unpublished (and did not reach the issue). (*Catarino*, *supra*, review granted [2021 Cal.App.Unpub.LEXIS 6472; 2021 WL 4785745].) Our colleagues in Division Two recently published

c. *Analysis*

Defendant contends that, because a judge made the finding that triggered section 667.6(d), mandating the imposition of consecutive sentences and increasing his minimum aggregate sentence from 5 years plus 135 years to life to 20 years plus 135 years to life,[14] the court infringed his right to a trial by jury as defined by *Alleyne*, *supra*, 570 U.S. 99. He acknowledges the holding in *Scott*, *supra*, 61 Cal.4th at page 405, that section 667.6(d) does not violate the Sixth Amendment, but he contends that subsequent high court authority has undermined it. He notes that "*Scott* relied on *Ice* and *Black*, both of which relied on *Harris*, which was overruled in *Alleyne*. *Black* predated both [*United States v.*] *Haymond* [(2019) 588 U.S. ___ [139 S.Ct. 2369] (*Haymond*)[15]] and *Alleyne*, while *Scott* predated *Haymond* and . . . rel[ied] almost entirely on *Ice* and *Black*."

---

an opinion involving a challenge to sentences imposed pursuant to section 667.6(d) (*People v. Wandrey* (2022) 80 Cal.App.5th 962, 978–980, review granted Sept. 28, 2022, S275942 [holding case pending decision in *Catarino*]), but the opinion addresses only the constitutionality of relying on judicial factfinding to mandate *consecutive* terms, not *full* terms.

[14] While Johnson's brief describes the "separate acts" finding as having raised the minimum aggregate sentence on the forcible lewd act counts from "8 years" to "32 years," the minima were in fact 5 years and 20 years, because the judge could still have exercised discretion to impose the full lower term of 5 years on each count, instead of the full middle term of 8 years on each.

[15] In *Haymond*, *supra*, 139 S.Ct. 2369, the high court expanded the *Apprendi* rule in a way irrelevant here. A federal statute authorized a judge, on hearing a petition to revoke supervised release, to find facts amounting to a new crime and, based on that factfinding, impose a new prison term with a mandatory minimum greater than the term based on the jury's factfinding. (*Id.* at pp. 2373–2374.) This violated the rule of *Alleyne*. (*Id.* at pp. 2378–2379 (plur. opn. of Gorsuch, J.); *id.* at p. 2386 (conc. opn. of Breyer, J.).)

23

While none of those statements is incorrect, nor is any of them relevant to the constitutionality of section 667.6(d) insofar as it required the court to make defendant's sentences consecutive. That aspect of the statute's operation simply does not implicate the Sixth Amendment, as the California Supreme Court, applying the rule of *Ice, supra*, 555 U.S. 160, held in *Scott, supra*, 61 Cal.4th at page 405. The overruling of *Harris, supra*, 536 U.S. 545, by *Alleyne, supra*, 570 U.S. 99, is irrelevant: neither *Harris* nor *Alleyne* addressed consecutive sentences. While *Ice did* cite *Harris* once (*Ice*, at p. 168), *Harris* was not necessary to its holding about consecutive sentencing. Nor does *Haymond, supra*, 139 S.Ct. 2369 address consecutive sentencing or undermine *Ice*. The core holding of that decision—that judicial factfinding which does not alter the sentence for a discrete crime, but affects only whether the sentences for multiple crimes are imposed consecutively or concurrently, does not violate the Sixth Amendment (*Ice*, at pp. 168–169)— remains clearly controlling law.[16]

We come, then, to the nub of the issue here. The constitutional analysis differs with regard to the other aspect of section 667.6(d). Under the "full . . . term" provision, a judge's factual findings increased not just

---

[16] The order granting review in *Catarino* limits the issue as follows: "Does . . . section 667.6, subdivision (d), which requires that a 'full, separate, and consecutive term' must be imposed for certain offenses if the sentencing court finds that the crimes 'involve[d] the same victim on separate occasions,' comply with the Sixth Amendment to the U.S. Constitution?" (*People v. Catarino*, S271828, Supreme Ct. Mins., Jan. 19, 2022 [2022 Cal.LEXIS 221].) While the text of that order can be read to include a question as to the constitutionality of requiring consecutive sentences, the petition for review, of which we take judicial notice (Evid. Code, § 452, subd. (b)(1)), expressly limits petitioner's challenge to the part of section 667.6(d) requiring "full" terms, while expressly conceding the constitutionality of, and eschewing any challenge to, the "consecutive term" mandate.

24

defendant's aggregate sentence but his mandatory minimum sentence for each of several discrete offenses. Were it not for section 667.6(d), the sentencing judge would have had discretion, on the second through fourth forcible lewd act counts, to impose either a full lower, middle, or upper term pursuant to section 667.6(c) or one-third the middle term pursuant to section 1170.1. The judicial finding that the crimes occurred on "separate occasions" triggered section 667.6(d) and eliminated that discretion by mandating the imposition of a full term on each count. That finding thus raised the mandatory minimum sentence on each count from one-third the middle term (2 years 8 months) to a full lower term (5 years).[17]

By specifying that a defendant who commits forcible lewd acts against the same victim on separate occasions must receive a "full" sentence for each discrete offense, the Legislature clearly meant to increase the punishment for the conduct at issue in the second and subsequent crimes—i.e., a forcible lewd act committed, after reasonable time to reflect, against the same victim as a prior such act. (§ 667.6(d)(2) ["In determining whether crimes against a single victim were committed on separate occasions . . . , the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior"].) That aspect of the statute, and the legislative intent it implies, are subject to the same rationale articulated in *Alleyne* to hold that a statute increased the punishment for a crime in a way triggering the Sixth Amendment: "[I]t is impossible to dispute that facts increasing the legally prescribed floor *aggravate* the punishment.

---

[17] While the court in fact chose to impose full middle-term sentences of eight years each on the three counts, the constitutionally significant point is that section 667.6(d) mandated minimum sentences of at least five years.

25

[Citations.] Elevating the low end of a sentencing range heightens the loss of liberty associated with the crime: The defendant's 'expected punishment has increased as a result of the narrowed range' . . . . [Citation.] Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? [Citations.] This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." (*Alleyne*, *supra*, 570 U.S. at p. 113.) Here, the "core crime" is a forcible lewd act on a child, and the "fact[s] triggering the mandatory minimum sentence" are that the defendant committed a similar crime against the same victim and committed the crime at issue despite having had a reasonable opportunity to reflect on his or her actions and choose to desist.

The Attorney General argues that *Ice*, *supra*, 555 U.S. 160 controls the analysis of section 667.6(d) in toto because the finding that triggers the statute—i.e., that a defendant committed offenses on "separate occasions"—is "used to decide whether to impose a consecutive sentence" and is part of a " 'regime for administering multiple sentences' "(quoting *Ice*, *supra*, at p. 168). Those statements, while correct, gloss over the fact that the same finding *also* determines the mandatory minimum sentence for each "particular offense" subject to the statute—a determination *Ice* identifies as the province of *Apprendi*. (*Ice*, *supra*, 555 U.S. at p. 163.) Section 667.6(d) thus differs fundamentally from the Oregon sentencing statute at issue in *Ice*. That statute authorized judges to make findings that had only one effect: to authorize the court to impose multiple sentences consecutively rather than concurrently. (See *Ice*, *supra*, at p. 165.) It did not authorize a judge to make a finding that altered the sentencing range for any discrete crime.

Section 667.6(d), by contrast, authorizes a judge to make a single factual finding that compels the court to do two distinct things: make multiple sentences run consecutively—a decision *Ice* sets beyond the pale of the Sixth Amendment—and make the sentence for each of one or more discrete crimes "full" in length, which *Ice* identifies as the " 'central sphere of [the *Apprendi* cases'] concern.' " (*Ice, supra,* 555 U.S. at p. 172; see *id.* at p. 163 [noting "offense-specific context that supplied the historic grounding" for *Apprendi*]; *id.* at p. 170 [identifying "*Apprendi*'s core concern" as "a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense"].) Although section 667.6(d) sets forth both consequences in a single phrase—"a *full*, separate, and *consecutive* term" (italics added)—they are distinct in effect and constitutional significance.

In his brief to the California Supreme Court in *Catarino* (of which we take judicial notice [Evid. Code, § 452, subd. (d)(1)]) the Attorney General asserts that a jury verdict, by itself, never entitles a defendant to a sentence of one-third the middle term on any specific offense, as section 1170.1 is part of a scheme for aggregating multiple sentences, and it is a judge's discretionary choice to make sentences consecutive instead of concurrent that triggers the one-third-the-middle-term provision. While that is true, it is beside the point. When a jury finds a defendant guilty of multiple felonies subject to the DSL, its verdict exposes the defendant to a *minimum potential* sentence, on the second and subsequent counts, of one-third the middle term. *Alleyne* forbids the use of judicially found facts to increase the mandatory minimum sentence for a discrete offense, an effect that "alters the prescribed range of sentences to which a criminal defendant is exposed" by raising its "floor." (*Alleyne, supra,* 570 U.S. at p. 112.)

That is what section 667.6(d) does.  Absent a judicial finding of "separate occasions," the prescribed range of sentences to which a defendant is exposed for a second or subsequent conviction of forcible lewd acts is 2 years 8 months to 10 years; with such a finding, the range is 5 years to 10 years.  The finding thus increases the "floor" of the range from 2 years 8 months to 5 years.  While a defendant is not "entitled" to a sentence of one-third the middle term, he or she is entitled, absent a judicial finding of "separate occasions," to be sentenced by a judge who has discretion either to impose a "full" lower, middle, or upper term, pursuant to section 667.6(c), or to impose one-third the middle term, pursuant to section 1170.1, subdivision (a).  A judicial finding of "separate occasions" eliminates that discretion and subjects a defendant to sentencing by a judge who has no option but to impose at least a full lower term.

The Attorney General's brief in *Catarino* also likens section 1170.1 to section 654, deeming it a provision that "reduces" sentences.  He cites Sixth Amendment decisions finding it permissible for a judge to make factual findings that determine whether execution of the sentence(s) on one or more convictions must be stayed under section 654, because that statute, very loosely speaking, entails "sentencing reduction rather than a sentencing enhancement."  (*People v. Deegan* (2016) 247 Cal.App.4th 532, 547, citing *People v. Cleveland* (2001) 87 Cal.App.4th 263, 270.)  Even if that characterization of section 654 were accurate,[18] it focuses on the wrong

---

[18] The argument in fact rests on a false premise, for section 654 does *not* reduce the sentence for any crime.  Rather, it compels a court to impose but stay execution of the sentence for a crime, without changing its length.  (*People v. Duff* (2010) 50 Cal.4th 787, 796 ["when a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* sentence but to stay the *execution* of the duplicative sentence"].)  We do not

28

statute. When section 1170.1 requires a court to impose sentences of one-third the middle term on a defendant's second and subsequent convictions, it does reduce the sentence on each discrete offense. But the statute triggered by the judicial factfinding at issue here is section 667.6(d).

The relationship between those two statutes is straightforward. Section 1170.1, enacted in 1976 as part of the DSL (Stats. 1976, ch. 1139, § 273, p. 5141, [originally codified as § 1170.1a], renumbered by Stats. 1977, ch. 165, § 17, p. 649), established a default rule that second and further felony convictions governed by the DSL, if imposed consecutively rather than concurrently, must be subject to sentences of one-third the middle term. Section 667.6(d), enacted in 1979 (Stats. 1979, ch. 944, § 10, p. 3258), created an exception to that default rule. Under that exception, certain factual findings about the conduct underlying convictions of certain crimes mandate the imposition of a full term on each. That mandate raises the minimum sentence on those crimes from one-third the middle term to a full lower term. Such reliance on judicial factfinding to increase the mandatory minimum sentence for a discrete crime violates the Sixth Amendment. (*Alleyne, supra,* 570 U.S. at p. 103.)

---

question the rule of the cases the Attorney General cites, i.e., that judicial factfinding under section 654 does not violate the Sixth Amendment. But the true basis for that rule cannot be that section 654 reduces rather than enhances sentences, for section 654 can reduce only a defendant's *cumulative* sentence. *Ice* holds that the *Apprendi* rule is limited to "the offense-specific context that supplied [its] historic grounding" (*Ice, supra,* 555 U.S. at p. 163); as the dissent aptly put it, "the rule of *Apprendi* applies only to the length of a sentence for an individual crime and not to the total sentence for a defendant" (*id.* at p. 173 (dis. opn. of Scalia, J.)). Insofar as pre-*Ice* decisions suggest that the constitutionality of judicial factfinding can turn solely on how that factfinding affects the length of a defendant's *cumulative* sentence, *Ice* has shown that rationale to be unsound.

d. *Prejudice*

The Attorney General asserts that any error in basing full sentences on a judicial finding that the crimes occurred on separate occasions was harmless. We can find such error harmless only if we conclude "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" the facts needed to support the judgment. (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Because the error affects only the forcible lewd act counts, the question is whether the jury would have found that those four offenses all occurred on separate occasions.

Defendant's forcible lewd act convictions rest on two acts of touching Jane's vagina with his finger and two acts of touching it with his penis. But the Attorney General's claim of harmlessness focuses on showing that the jury must have found nine distinct acts of oral copulation underlying the nine aggravated sexual assault counts—a point irrelevant to whether the jury would beyond a reasonable doubt have found that the four vaginal touchings occurred on separate occasions. The Attorney General concedes that "it is theoretically possible that some (or even all four) . . . vaginal touchings had occurred on the same day that [defendant] had licked [Jane]'s vagina"—and so possibly on the same occasion as one another. The Attorney General has not established harmlessness.

e. *Remedy*

The Attorney General requests that, if we find prejudice, we remand the case for the trial court to resentence defendant on the affected counts by exercising its discretion under section 667.6(c) to decide whether to impose "full, separate, and consecutive" terms. Defendant does not oppose the request, and we conclude that it serves the interests of justice to grant it. The Attorney General also requests that we instruct the trial court to allow

30

the prosecutor, if the court declines to impose full sentences under section 667.6(c), to elect to try the "separate occasions" issue to a new jury. We will leave it to the trial court to address in the first instance, if it proves necessary, any request to pursue such a retrial.

### 2. The Claim of Excessive Punishment

Defendant contends that his aggregate sentence of 32 years plus 135 years to life is excessive under the Eighth Amendment of the federal Constitution and article I, sections 6 and 17 of the California Constitution.[19] A sentence violates the federal and state Constitutions, respectively, if the defendant shows that it is " 'grossly disproportionate' " to the severity of the crime (*People v. Russell* (2010) 187 Cal.App.4th 981, 993, quoting *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1076 [U.S. Const.]) or " 'so disproportionate . . . that it shocks the conscience and offends fundamental notions of human dignity' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478 [Cal. Const.]). (See *People v. Crooks* (1997) 55 Cal.App.4th 797, 808 [defendant bears burden of persuasion].) Courts consider several factors in assessing the proportionality of a sentence under the federal and California Constitutions, but the only factor defendant addresses is what California authority deems "the nature of the offense and the offender with regard to the degree of danger present to society" (*Russell*, *supra*, 187 Cal.App.4th at p. 993) and

---

[19] Because the four 8-year sentences on the forcible lewd act convictions must be vacated and the case remanded for resentencing, which could result in a new aggregate sentence on those offenses ranging from 5 to 32 years, we could hold that defendant's challenge is no longer ripe. But we conclude that judicial economy warrants resolving the issue now. The constitutional analysis will not differ if defendant's ultimate aggregate sentence is 5 years plus 135 years to life, 32 years plus 135 years to life, or any intermediate figure.

federal authority calls "the gravity of the offense and the harshness of the penalty" (*Solem v. Helm* (1983) 463 U.S. 277, 292).[20]

Defendant contends that his "de facto [life without possibility of parole] sentence" is grossly disproportionate to his crimes because he did not use force or threats; his abuse did not prevent Jane from wishing to see him (based on evidence she left drawings at his parents' house saying, "I miss you," and said she wanted him to go not to jail but "somewhere nice" where she could visit); he had no criminal record; and a recidivism test showed a below-average risk of reoffense, which would be yet lower by the time of any possible parole, given his current age of 48. The Attorney General cites a decision in a similar case upholding a total sentence of 129 years for a defendant who repeatedly sexually abused his 11-year-old stepdaughter, and whose lack of criminal record and "mental impairment" did not outweigh the severity of his crimes and the threat he posed to the community. (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 523, 528–530; see *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230–1231 [upholding sentence of 135 years to life on 16 counts of sexually abusing four young girls, in some cases by force or threats to harm relatives].) Similarly, here, precedent does not enable us to say that defendant's cumulative sentence of 32 years plus 135 years to life shocks the conscience and is grossly disproportionate to the 13 crimes of which he was convicted and sentence was imposed.

---

[20] California law also permits intra- and inter-jurisdictional proportionality review, i.e., comparison of the punishment with those prescribed for more serious crimes in the same jurisdiction, and for the same crime in other jurisdictions. (*People v. Russell*, *supra*, 187 Cal.App.4th at p. 993.) Defendant's brief does not set forth either sort of comparison.

## III. DISPOSITION

Defendant's convictions are all affirmed, as are his sentences on counts 1 through 18. The sentences on counts 19 through 22 are vacated, and the case is remanded for the court to conduct proceedings consistent with this opinion to resentence defendant on those four counts pursuant either to Penal Code section 667.6, subdivision (c), or Penal Code sections 669 and 1170.1. If the court declines to impose sentence pursuant to section 667.6, subdivision (c), the prosecution may make, and the court may exercise its discretion to resolve, a request to conduct a limited retrial in which a jury will make a factual finding whether the offenses occurred on "separate occasions" within the meaning of section 667.6, subdivision (d)(2).

STREETER, Acting P. J.

WE CONCUR:

POLLAK, J.*
BROWN, J.

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

STREETER, Acting P. J., Concurring.

On the issue of excessive punishment, defendant's primary argument is that he cannot complete his sentence in his lifetime. Quoting Justice Mosk's assertion that "[a] sentence . . . that cannot possibly be completed in the defendant's lifetime, makes a mockery of the law and amounts to cruel or unusual punishment" (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.); see *People v. Deloza* (1998) 18 Cal.4th 585, 600–602 (conc. opn. of Mosk, J.)), defendant contends that, in this case, a sentence that amounts de facto to life in prison without the possibility of parole (LWOP) offends the federal and state Constitutions. I write to say there may be something to his complaint.

The position Justice Mosk took in *Hicks* and *Deloza*, of course, is not the law (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382–1383) and has not gained any traction within our Supreme Court in the decades since *Deloza* was decided. Meanwhile, some Court of Appeal colleagues have rejected his analysis (see *People v. Haller* (2009) 174 Cal.App.4th 1080, 1089–1090; *Byrd*, *supra*, 89 Cal.App.4th at pp. 1382–1383), while upholding lengthy, impossible-to-complete prison sentences. We follow these cases here, accepting the Attorney General's cited authority for the sentence. (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 528–530; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230–1231).

The opinions disagreeing with Justice Mosk's perspective on this issue are in line with the prevailing view under the federal Constitution since the 1980's that courts have virtually no role in setting constitutional boundaries on criminal punishment. (See, e.g., *Harmelin v. Michigan* (1991) 501 U.S. 957, 996, 1004–1005 (conc. opn. of Kennedy, J.); *Rummel v. Estelle* (1980) 445 U.S. 263, 272; see also *Ewing v. California* (2003) 538 U.S. 11, 20–24.)

Justice Mosk's view, on the other hand, recognizes that California courts carrying out their paramount duty to apply the "evolving standards of decency" standard enunciated in *Furman v. Georgia* (1972) 408 U.S. 238, 269 (conc. opn. of Brennan, J.) and *Trop v. Dulles* (1958) 356 U.S. 86, 100–101 (plur. opn. of Warren, C. J.) may properly intervene when a legislatively prescribed sentence has gone too far under the "cruel *or* unusual" clause of the California Constitution (Cal. Const., art. I, § 17, italics added).

Justice Mosk recognized—rightly, I believe—that at some point sentencing may cross a line distinguishing punishment in service of legitimate societal ends from performative cruelty, which is what tyrannical government does. As guardians of the rule of law, courts must stand ready to point out where that boundary is. It is one of the most important things we do. So rather than dismiss Justice Mosk's view as an outlier that remains little more than an artifact of California judicial history, I believe there remains the possibility his view was simply ahead of its time. The California Constitution is a charter of " 'independent force.' " (*People v. Buza* (2018) 4 Cal.5th 658, 684.) Although the "federal Constitution affords no greater protection than the state Constitution" in this area (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510), it may well be that Justice Mosk anticipated the need to begin giving article I, section 17 of the California Constitution a more expansive reading than its federal counterpart. Indeed, in an era when prison overcrowding itself has presented serious constitutional issues (see *Brown v. Plata* (2011) 563 U.S. 493, 517–522), his perspective on the issue of excessive sentencing may have greater resonance today.

Until and unless the People, by initiative constitutional amendment, authorize a new type of special circumstances finding for LWOP sentences in specified non-homicide offenses, I believe Justice Mosk's view may have merit

2

where a concatenation of consecutive non-homicide sentences results in an aggregate sentence so long that no human being could ever serve it. Whatever penological objectives may be claimed, it is perfectly clear that the sheer length of such a sentence, as imposed, is intended to transform punishment into spectacle. On the right record in such a case, in light of various recent developments in criminal sentencing[1] and other aspects of criminal law,[2] and in light of the greater judicial willingness today to recognize constitutional limits on the harshest forms of criminal punishment than was once the case,[3] I can envision the California Supreme Court

---

[1] See, e.g., Senate Bill No. 567 (Stats. 2021, ch. 731, §§ 1.3, 3(c)) (adding § 1170, subd. (b)(1)–(3) [revising the statutory sentencing triad in determinate sentencing cases to require that the chosen term shall not exceed the middle term absent specified findings]), Proposition 36 (ballot initiative reducing the punishment imposed when a defendant's third felony conviction is not serious or violent [§§ 667, subd. (e)(2)(c), 1170.12, subd. (c)(2)(C), as amended by Prop. 36, §§ 2, 4, approved by the voters at Gen. Elec. (Nov. 6, 2012)]).

[2] See, e.g., Senate Bill No. 1437 (Stats. 2018, ch. 1015, §§ 1, 4) (ameliorative revision of homicide law adding statutory procedure that permits defendants previously convicted of murder under a felony murder or natural and probable consequences theory to petition for resentencing), Proposition 47 (approved by the voters at Gen. Elec. (Nov. 4, 2014) and codified as § 1170.18 [ameliorative revision of various penal laws that reclassifies as misdemeanors certain narcotics and theft offenses previously cast as felonies and allows felons convicted under reclassified laws to petition for resentencing]).

[3] See, e.g., *Roper v. Simmons* (2005) 543 U.S. 551, 568, *Graham v. Florida* (2010) 560 U.S. 48, 75, and *Miller v. Alabama* (2012) 567 U.S. 460, 465 (curtailing on Eighth Amendment grounds the imposition of sentences of death or life without the possibility of parole for juvenile offenders).

adopting some form of this view as a matter of California Constitutional law. And I would urge it to consider doing so.

STREETER, Acting P. J.

I CONCUR:

POLLAK, J.*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

POLLAK, J.* — I concur in full with the conclusions and analysis in the lead opinion. I write separately only to emphasize the need for reconsidering the limits of acceptable punishment. The Legislature has prescribed a term of five, eight, or ten years in prison for forcible lewd acts on a child, hardly an insignificant punishment. Defendant's sentence reflects less the legislative determination of the appropriate term for his misconduct than the prosecutor's choice of the number of offenses to charge. The de facto life-without-possibility-of-parole sentence illustrates the observation that "[p]enalties, like currency, can become inflated; and in this country, inflation has reached runaway proportions." (von Hirsch, Doing Justice – The Choice of Punishments: Report of the Committee for the Study of Incarceration (1976) p. 132.) Defendant's offenses are deserving of harsh punishment, but defendant does not pose a continuing threat to society. Imprisonment for the rest of his life is not necessary to ensure that he does not reoffend or to deter others from engaging in similar misconduct. "[T]he excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance." (*In re Estrada* (1965) 63 Cal.2d 740, 745.) Defendant did not argue that the comparison of his sentence to the sentence for even more serious crimes, and to the sentence imposed for his crimes in other jurisdictions, tends to show that his sentence is disproportionate to the severity of his offenses, but that comparison cannot be overlooked. (See *In re Lynch* (1972) 8 Cal.3d 410, 426–429.) As unacceptable as defendant's conduct was, it does not justify punishment more severe than for rape or first degree

murder.  Unfortunately, however, this court is bound by existing precedents to affirm the judgment.

POLLAK, J.*

_____

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:  Superior Court of California, County of Napa

Trial Judge:  Hon. Mark S. Boessenecker

Counsel:      Randi Covin, under appointment by the Court of Appeal, for
               Defendant and Appellant.

              Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant
               Attorney General, Jefferey M. Laurence, Senior Assistant
               Attorney General, Eric D. Share, Supervising Deputy
               Attorney General, John H. Deist, Deputy Attorney General
               for Plaintiff and Respondent.